UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jay Connor, | |
| Plaintiff, | C/A No. 2:21-cv-02151-JD-MGB |
| Vs. | |
| Complete Reservation Solutions, LLC, Sean Engler Individually, Leonides Ramirez Individually, and John Doe | VERIFIED COMPLAINT |
| Defendants. | |

## TYPE OF ACTION

1. This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section 37-21.

## PARTIES

2. Plaintiff is a resident of Charleston County, South Carolina.

3. The calls alleged in this complaint were made to Plaintiff's wireless phone line in South Carolina.

4. COMPLETE RESERVATION SOLUTIONS, LLC (hereinafter "Complete Reservation") is a Delaware limited liability company.

5. The registered agent for Complete Reservation is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

1

6. The principal address listed for Complete Reservation is 8 The Green, Dover, DE 19808.

7. Complete Reservation conducts and transacts business in South Carolina.

8. Complete Reservation either directly or by those on its behalf, makes calls to residents of South Carolina.

9. Complete Reservation is a licensed Seller of Travel in the state of Florida. (License #ST49072)

10. SEAN ENGLER (hereinafter "Engler") is an individual believed to reside at 1627 Oak Springs Place, Lake Mary, FL 32746.

11. Engler is a managing member and owner of Complete Reservation.

12. LEONIDES RAMIREZ (hereinafter "Ramirez") is an individual believed to reside at 2867 Saint Augustine Drive, Orlando, FL 32825-7141.

13. Ramirez is a managing member of Complete Reservation.

14. The true identity of John Doe is unknown.

## VENUE AND JURISDICTION

15. This cause of action arises out of conduct of Defendants initiating telephone calls to Plaintiff's wireless telephone number in Charleston County South Carolina.

16. Plaintiff is a resident of Charleston County and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2), because a substantial part of the events giving rise to the claims-the calls and sale of goods and services directed at South Carolina residents, including the Plaintiff-occurred in the District and because Plaintiff resides in the District.

17. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy

Protection Act, S.C. Code Section 37-21, because the state claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this chapter must be construed to limit any remedies, causes of action, or penalties available to a person or governmental agency under another federal or state law."

18. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to South Carolina residents, and derived revenue from South Carolina residents, and sell services to South Carolina resident, including the Plaintiff.

19. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of the defendants and they knowingly called into South Carolina to solicit South Carolina residents.

## The Telephone Consumer Protection Act

20. Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an automated telephone dialing system ("ATDS") or with a prerecorded or artificial voice are referred to as "robocalls" by the FCC. Encouraging individuals to hold robocallers accountable, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

21. In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat.

3

2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

22. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

23. The Federal Communications Commission ("FCC") has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnotes omitted) (internal quotation marks omitted).

### The South Carolina Telephone Privacy Protection Act

24. In pertinent part and as amended, at Section 37-21-40 (A), the "SCTPPA" requires of all telephone solicitations into the State, "[A]t the outset of a telephone solicitation, a telephone solicitor shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made…"

25. The SCTPPA prohibits (a) initiating a telephone solicitation call without accurate Caller ID Information (b) initiating a telephone solicitation call that does not "provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made" (c) initiating a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again (d) initiating a telephone solicitation to a telephone number on the National Do Not Call Registry (e) initiating a call using a South Carolina Caller ID area code without a physical presence in the state.

26. At Section 37-21-80 (A), the "SCTPPA" provides, "A person who is aggrieved by a violation of this chapter is entitled to initiate an action to enjoin the violation and to recover actual losses in addition to damages in the amount of one thousand dollars for each violation."

27. At Section 37-21-80 (B), the "SCTPPA" provides, "If the court finds a wilful violation, the court may, in its discretion, increase the amount of the award to an amount not exceeding five thousand dollars for each violation."

28. At Section 37-21-80 (B), the "SCTPPA" provides, "Notwithstanding another provision of law, in addition to any damages awarded, the person initiating the action for a violation of this chapter may be awarded reasonable attorneys' fees and court costs."

## The Worsening Problem of Robocalls

29. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

30. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

31. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018),

32. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018),

## TELEPHONE CALLS MADE TO PLAINTIFF

33. Plaintiff's wireless telephone number 843-XXX-5724 has been registered on the National Do Not Call Registry since 2009.

34. On or about June 3, 2021, and June 14, 2021, four (4) telephone calls, (hereinafter "the Calls") were initiated to the Plaintiff's wireless telephone line 843-XXX-5724.

35. The Calls transmitted non-working South Carolina caller IDs, (aka "spoofed caller IDs"), to intentionally mislead consumers that the calls originated from South Carolina.

36. A list of the Calls and corresponding spoofed caller IDs is attached hereto and incorporated herein as Exhibit A.

37. When plaintiff answered the Calls, the reps did not give their full names, used alias business names, and names of other companies instead of Complete Reservation when trying to sell the cruises.

38. In addition to being on the national Do Not Call Registry, Plaintiff made Do Not Call requests to Complete Reservation prior to June 3, 2021.

39. Plaintiff has filed a previous complaint against Complete Reservation in Charleston County Small Claims Court for another unwanted call made by or on their behalf prior to June 3, 2021.

40. Upon information and belief, Defendants have initiated more than ten (10) additional anonymous calls to plaintiff using a spoofed caller ID.

## COMPLETE RESERVATION'S VICARIOUS LIABILITY

41. Complete Reservation is a "person," as defined by 47 U.S.C. § 153(39).

42. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. 227(b)(2).

43. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

7

44. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

45. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Complete Reservation may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

46. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

47. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

48. To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

49. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

50. Complete Reservation is legally responsible for ensuring that the company who made the telemarketing calls for them complied with the TCPA, even if Complete Reservation did not themselves place the calls.

51. Complete Reservation knowingly and actively accepted business that originated through illegal telemarketing.

52. By hiring a company to make calls on its behalf, Complete Reservation "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to

9

the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

53. Moreover, Complete Reservation maintained interim control over the actions of the party that made the call.

54. For example, Complete Reservation had absolute control over whether, and under what circumstances, they would accept a customer.

55. Complete Reservation also gave interim instructions to the company that made the calls by providing the parameters of customers, volume of calling and contracts it would purchase.

56. Finally, the FCC held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Dish*, 28 FCC Rcd. at 6592-93 ¶ 46. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## **Engler and Ramirez Individual Liability**

57. Engler participated in the calls alleged herein, had knowledge of the calls, or by failure to act, allowed such calls to be made.

58. Ramirez participated in the calls alleged herein, had knowledge of the calls, or by failure to act, allowed such calls to be made.

59. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 213 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct,

personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TPCA would lose much of its force.").

## CAUSES OF ACTION

### Count One:

### Violations of the TCPA's Automated Calling provisions

60. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

61. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone number of Plaintiff using an ATDS.

62. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is presumptively entitled to an award of $500 in damages for each and every violation to his cellular telephone numbers (1) using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

64. The Defendants' violations were negligent and/or knowing.

11

## Count Two:

## Violations of the SCTPPA

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating a call to a telephone number on the federal Do Not Call Registry (b) failure to maintain accurate Caller ID Information and (c) the failure to "shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made".

67. The Defendants' violations were negligent and/or knowing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;

- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;

- For an award of attorneys fees pursuant to the SCTPPA;

- For an Order enjoining the Defendants from using anonymous calls that transmit spoofed caller IDs to make solicitation calls to South Carolina residents.

- For unspecified punitive damages in an amount to be determined by this Court.
- For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

Jay C. Connor *Pro Se*
215 East Bay Street 201-F
Charleston, SC 29401
(843) 718-8180
Jayc650@hush.com

July 16, 2021